UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| DAVID B. PUSHKIN, | Civil Action No. 12-324(KM) (MAH) |
| Plaintiff, | |
| v. | OPINION |
| BETH R. NUSSBAUM, et al., | |
| Defendants. | |

**HAMMER, United States Magistrate Judge**

This matter comes before the Court on *pro se* Plaintiff's motion for leave to file a Fourth Amended Complaint, D.E. 288. Defendants oppose Plaintiff's motion, D.E. 293, 298, 300, 302, 303 and 304. The Court also has considered Plaintiff's reply in further support of his motion, D.E. 334. For the reasons set forth herein, the Court will deny Plaintiff's motion.

**I.  BACKGROUND**

**A.  Factual Allegations**

Plaintiff filed the original Complaint in this matter on or about November 30, 2010, suing the following:

1. Beth R. Nussbaum ("Nussbaum") -- Plaintiff's ex-wife
2. RHI Entertainment Inc. ("RHI") -- Nussbaum's employer during her marriage to Plaintiff
3. Meritain Health ("Meritain") -- the third party administrator ("TPA") of the RHI employee benefit health plan ("RHI plan")
4. Timothy J. Quinlivan, Esq. -- an attorney employed by Meritain Health
5. Aronsohn Weiner and Salerno, LLC ("AWS") -- the law firm that represented Nussbaum in her divorce proceedings from Plaintiff, and
6. Kevin L. Bremer, Esq. -- an attorney with AWS

Plaintiff claims that he was denied medical benefits to which he believes he was entitled.

Compl., Nov. 30, 2010, D.E. 2.  Through amendment, Plaintiff named additional defendants:

1. GEICO
2. Premier Prizm Solutions ("PPS") – a case-management organization for personal-injury claims
3. Paul Feldman – a GEICO employee
4. Lisa Ardron and Gina Fuge -- two employees of PPS, and
5. Dominic Spaventa ("Spaventa").

Amd. Compl., Feb. 17, 2011, D.E. 13.

As summarized in Judge McNulty's Opinion on Plaintiff's Motion to Amend the Second Amended Complaint, Plaintiff alleges as follows:

> Dr. Pushkin is a science educator, formerly employed by Bergen Community College and Fairleigh Dickinson University.  He sustained an injury in August 2005 and was diagnosed with a lumbar spinal fracture between November 26, 2006 and January 22, 2007. On January 28, 2008, he sustained additional spinal injury in a motor vehicle accident. On March 21, 2007, he underwent fusion surgery on his lumbar spine. Pushkin asserts that by the end of 2008, he was no longer capable of performing duties associated with teaching chemistry and physics, and his employment was terminated on December 18, 2008. He filed for unemployment benefits and has not been employed since.

Opinion on Plaintiff's Motion to Amend the Second Amd. Compl. Sept. 11, 2014, D.E. 286, at 3-4.  Essentially, Plaintiff maintains that due to the actions of Defendants, he did not receive reimbursement from either his auto insurer or his ex-wife's health insurance plan.  Pl.'s Motion to Amend the Third Amd. Comp., Oct. 15, 2014, D.E. 288.

### B.  Procedural History

The procedural history of this matter is lengthy, but bears discussion to place the instant motion in its proper context.  Plaintiff originally filed a complaint in 2010 in the United States District Court for the Southern District of New York.  Plaintiff sought damages from Defendants Nussbaum, RHI, Quinlivan, Meritain, Bremer, and AWS in the amount of $2,000,000 for "lost potential wages and employers benefits," "lost retroactive [extended term] Social Security Disability benefits, unpaid medical expenses, additional debt associated with unpaid medical

expenses, costs associated with independent medical insurance premiums," and costs associated with Americans with Disabilities Act-complaint housing and "medical support requirements." Compl., Nov. 30, 2010, D.E. 2, at 2.

Plaintiff alleged that after he had spinal surgery in 2007, Defendants "willfully, repeatedly and adversely" interfered with Plaintiff's "health care and recovery," "physical disability status and legal eligibility for Social Security Disability (extended term) benefits under the Social Security Act," "legal eligibility for COBRA Health Insurance in accordance with the Social Security Act of 1935 and the Medicare Act of 1965," "legal medical insurance coverage," and "legal right to independent medical coverage under the 2010 Recovery Act's COBRA Health Insurance Continuation Premium Subsidy." *Id.* ¶¶ 1-3, 5-6. Plaintiff also alleges that Defendants "willfully, repeatedly and adversely" "violated Plaintiff's rights and protections under the Americans with Disabilities Act of 1990," and "provided and used false information in order to deny Plaintiff's legal medical insurance coverage." *Id.* ¶¶ 4, 7.

On February 17, 2011, Plaintiff moved to amend his original Complaint. Pl.'s. Mot. to Amd. Compl., Feb. 17, 2011, D.E. 12. Plaintiff's 292-page Amended Complaint modified the amount sought in damages from $2,000,000 to $2,092,375. Amended Compl., Feb. 17, 2011, D.E. 13, at 2. It also provided a lengthy account of Plaintiff's surgeries, treatments, procedures, hospitalization, physical ability, rehabilitation, and his relationships with each of the Defendants. *Id.* at 3-11. It also alleged that Plaintiff's ex-wife did not support or accommodate him during his recovery, leading to their divorce and various obstacles in obtaining employment and health insurance coverage for crucial medical treatment. *Id.* Plaintiff also alleged that interference by RHI, Meritain, GEICO, PPS, Feldman, Ardron, Fuge, and Spaventa, caused Plaintiff to fail to obtain health insurance and COBRA benefits, and therefore forced him into significant medical

debt. *Id.* Plaintiff's motion to amend the Complaint was granted on March 14, 2011. Order, March 14, 2011, D.E. 14.

Between April 2011 and August 2011, the Defendants filed various motions to dismiss the Amended Complaint, or to transfer it based on improper venue. Motions to Dismiss, May 10, 2011, D.E. 36, 40, 43, 47, 50; Motion to Dismiss, July 15, 2011, D.E. 88. On January 9, 2012, the Southern District of New York transferred the instant matter to this Court pursuant to 28 U.S.C. § 1406(a), and did not reach the motions to dismiss. Memorandum Order, Jan. 9, 2012, D.E. 165. This matter was then assigned to Judge Cavanaugh and Magistrate Judge Dickson.

Once this matter was transferred to this District, all Defendants renewed their motions to dismiss. Motion to Dismiss the Amended Complaint by Meritain and Quinlivan, Aug. 30, 2012, D.E. 208; Motion to Dismiss Plaintiff's Complaint by PPS, Aug. 30, 2012, D.E. 209; Motion to Dismiss by RHI, Aug. 31, 2012, D.E. 210; Motion to Dismiss the Amended Complaint by Nussbaum, Aug. 31, 2012, D.E. 211; Motion to Dismiss the Amended Complaint by Ardron, Feldman, Fuge, GEICO and Spaventa, Sept. 4, 2012, D.E. 212; Motion to Dismiss by AWS and Bremer, Sept. 5, 2012, D.E. 213.

On April 25, 2013, Judge Cavanaugh granted Defendants' motions "without prejudice to Plaintiff's right to refile his Complaint within thirty days with more specificity as to each Defendant so each may ascertain the claims asserted against him or her." Opinion and Order, Apr, 25, 2013, D.E. 227, 228. Judge Cavanaugh determined:

> Section Two of Plaintiffs Amended Complaint contains a bulleted list of six statutes, which Plaintiff points to as the basis for this Court's federal question jurisdiction. However, the Amended Complaint makes no mention of which statute in particular Plaintiff seeks to hold each Defendant liable for violating nor of which conduct in particular stands in violation of the statutes.

Opinion, Apr, 25, 2013, D.E. 227, at 6-7. Judge Cavanaugh concluded that the Amended Complaint made it impossible for Defendants to ascertain what the claims against them were, and explained that "[a]lthough this Court is sensitive to the challenges a *pro se* litigant faces, the Court cannot expect the Defendants to defend against claims that are not clearly and specifically alleged." *Id.* at 7. The District Court found that

> [a]s the Amended Complaint is not broken up into individual counts, the Moving Defendants must comb through forty-five lengthy paragraphs of factual allegations and pinpoint each instance where the numerical code Plaintiff has assigned to each Defendant appears and attempt to determine how it corresponds to the list of federal statutes contained in Section Two.

*Id.* Accordingly, the Court held that "as it pertains to each of the Moving Defendants, the pleading requirements of Rule 8 have not been satisfied and Plaintiff has failed to plead his Amended Complaint with requisite specificity." *Id.* at 8.

Plaintiff sought, and was granted, a sixty-day extension to submit his Amended Complaint. Order Granting Application/Petition to Resubmit Amended Complaint, May 14, 2013, D.E. 230. On July 26, 2013, Plaintiff filed his Second Amended Complaint. Amended Complaint, July 26, 2013, D.E. 232. The Defendants again moved to dismiss. Plaintiff filed oppositions to these motions on August 19, 2013 and September 4, 2013. Plaintiff also moved for Judge Cavanaugh to recuse himself, which the Court denied. Opinion and Order Denying Application/Petition for Recusal, Oct. 21, 2013, D.E. 269.

On October 10, 2013, Plaintiff filed a notice of medical leave or adjournment due to an impending surgery. Notice of Medical Leave/Adjournment, Oct. 10, 2013, D.E. 268. On April 3, 2014, after Judge Cavanaugh retired, this matter was reassigned to District Judge Kevin McNulty and the Undersigned. Order Reassigning Case, Apr. 3, 2014, D.E. 270.

On April 15, 2014, Judge McNulty granted Defendants' motions to dismiss. Opinion and Order, Apr. 15, 2014, D.E. 273 and 274. Judge McNulty observed:

> It is fair to say that Plaintiff has either disregarded Judge Cavanaugh's instructions or done precisely the contrary. He has now filed an 86-page SAC (It appears to be in 11-point type, 1½ spaced). (ECF No. 232). Attached to the SAC are 71 exhibits. The paragraphs are not numbered. No individual causes of action are identified.
>
> . . . .
>
> More broadly, virtually all of the defendants assert that the SAC does not cure the deficiencies that resulted in the dismissal of the (First) Amended Complaint, and I agree. It is clear that the SAC, if anything, amplifies the problems of the First. Plaintiffs SAC now requires Defendants to comb through 86 pages of factual allegations without any delineated causes of action or even numbered paragraphs and attempt to decipher a link between Defendants' alleged conduct and some basis of liability related to one of the listed statutes. As with Plaintiffs first Amended Complaint, the Court 'cannot expect Defendants to defend against claims that are not clearly and specifically alleged.'

*Id.* at 7-8 (quoting Opinion, Apr, 25, 2013, D.E. 227, at 11-12). Judge McNulty concluded that "[d]espite specific directions from Judge Cavanaugh, Plaintiffs SAC still does not specify which actions of which Defendant entitle him to what relief under which statute and why. I therefore find that the SAC must be DISMISSED." *Id.* at 9. Judge McNulty ordered that the dismissal would be with prejudice "unless Plaintiff within 30 days of this Order submits a properly supported motion to amend the Complaint under Fed. R. Civ. P. 15, and such motion is granted." Order, Apr. 15, 2017, D.E. 274.

On May 5, 2014, Plaintiff again moved to amend. D.E. 275. On May 22, 2014, Judge McNulty directed all Defendants to respond to Plaintiff's motion within thirty days, and directed that "[s]uch papers should concentrate on the issue of whether permitting the amendment would be "futile"— *i.e.*, whether the 3AC [Third Amended Complaint] could survive a motion to dismiss. *See generally Foman v. Davis*, 371 US 178, 182 (1962)." Memorandum/Order, May 22, 2014, D.E. 277, at 2. Judge McNulty also cautioned Plaintiff that "[t]he normally liberal

6

standard of amendment will be considered in light of the fact that this is not a first, but a third, amended complaint." *Id.*

Defendants opposed the motion to amend. On September 11, 2014, Judge McNulty denied Plaintiff's motion, finding that "the proposed third amended Complaint does not cure the deficiencies in the Second Amended Complaint as discussed in the Court's April 15, 2014 Opinion and Order granting Defendants' motion to dismiss without prejudice (Docket Nos. 273, 274)." Order, Sept. 11, 2014, D.E. 287. Judge McNulty stated that the proposed Third Amended Complaint

> fails to correct many of the deficiencies found in the 2AC.
> To be sure, the P3AC makes certain improvements: for the first time, we find numbered paragraphs; titled causes of action (e.g., "Cause of Action related to Personal Injury and Negligence"); and incorporation by reference of factual allegations under each titled cause of action. However, the P3AC ultimately fails to plead facts sufficient to put any of the defendants on notice as to how their actions could plausibly result in liability.
>
> It is generally clear, for example, that Pushkin is aggrieved by his ex-wife's treatment of him, the expiration of COBRA health insurance he enjoyed through his ex-wife's employer, certain insurers' failure to pay claims, the conduct of his ex-wife's attorneys, and so on. I have no reason to doubt that Plaintiff's physical injuries are causing him distress, that he feels abused by his ex-wife's lawyers, or that the aftermath of his divorce left him without the benefit of the couple's combined resources, including insurance. Those circumstances, however, do not necessarily translate to a federal court action against all of the many parties involved. Missing are allegations as to who did what, and when, and what cause of action is asserted against each defendant.
>
> There is also a "group pleading" problem. The final ten factual allegations (P3AC ¶¶ 38-47) cite "the collective actions by all twelve Defendants." None of the numbered causes of action specifies the defendant or defendants against which it is directed.

Opinion, Sept. 11, 2014, D.E. 286, at 9-10. Judge McNulty ordered that "this denial is without prejudice to the filing of one more properly supported motion to amend the complaint." Order, Sept. 11, 2014, D.E. 287.

7

On October 15, 2014, Plaintiff again moved to amend. Motion to Amend/Correct Third Amended Compl., Oct. 15, 2014, D.E. 288. Defendants again opposed the motion. Plaintiff requested, and received, numerous adjournments of his motion due to his medical condition. Ultimately, Plaintiff filed his reply brief in support of his motion to amend on September 6, 2016. Reply Brief/Aff. in Support of Motion to Amend & Fourth Amended Compl., Sept. 6, 2016, D.E. 334.

The proposed Fourth Amended Complaint continues to suffer many of the same pleading deficiencies as its predecessors. After careful scrutiny of the proposed Fourth Amended Complaint, it appears that Plaintiff brings the following claims against the Defendants:

Claim One: Plaintiff alleges a cause of action against his ex-wife, Nussbaum, for personal injury and negligence;

Claim Two: Plaintiff seeks relief against GEICO, PPS, Fuge, Ardron, Spaventa and Feldman for fraudulent concealment;

Claim Three: Plaintiff brings a cause of action against Nussbaum, RHI, Meritain, GEICO and PPS for false claims and fraud;

Claim Four: Plaintiff asserts claims against Defendants Nussbaum, RHI, Meritain, Quinlivan, Bremer, AWS, GEICO and PPS for negligent misrepresentation;

Claim Five: Plaintiff brings claims against all Defendants for civil conspiracy and fraudulent concealment;

Claim Six: Plaintiff alleges claims against Defendants Nussbaum, RHI, Meritain, Quinlivan, Bremer, AWS, GEICO and PPS for breach of insurance contract and breach of fiduciary duties, as well as for violations of relevant state laws, regulations and statutes;

Claim Seven: Plaintiff asserts that Defendants Nussbaum, Bremer and AWS, GEICO and PPS violated the Americans with Disabilities Act ("ADA") and the Persons with Disabilities Civil Rights Act of 1976 ("PDCRA");

Claim Eight: Plaintiff brings claims against Defendants Nussbaum, Bremer, AWS, RHI, Meritain, GEICO and PPS for a violation/denial of his civil rights and

> civil rights related to services, coverages, benefits and/or real and personal property; and

Claim Nine: Plaintiff alleges claims against Defendants Nussbaum, Bremer and AWS related to denial of Social Security Disability Benefits.

Proposed Fourth Amended Compl., Oct. 15, 2014, D.E. 288.

## II. DISCUSSION

The threshold issue in resolving a motion to amend is the determination of whether the motion is governed by Rule 15 or Rule 16 of the Federal Rules of Civil Procedure." *Karlo v. Pittsburgh Glass Works, LLC*, No. 10-1283, 2011 WL 5170445, at *2 (W.D. Pa. Oct. 31, 2011). Rule 15 states, in pertinent part, "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). "Rule 16, on the other hand, requires a party to demonstrate 'good cause' prior to the Court amending its scheduling order." *Karlo*, 2011 WL 5170445, at *2 (citing Fed. R. Civ. P. 16(b)(4)). As the Court has not entered a scheduling order in this case, Rule 15 governs the instant motion.

Under Rule 15(a)(2), a plaintiff may amend his complaint "when justice so requires." The Court may deny a motion to amend the pleadings only where there is (1) undue delay, (2) bad faith or dilatory motive, (3) undue prejudice, (4) repeated failures to cure deficiencies, or (5) futility of amendment. *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Long v. Wilson*, 393 F.3d 390, 400 (3d Cir. 2004) ("We have held that motions to amend pleadings [under Rule 15(a)] should be liberally granted.") (citations omitted); *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002) ("Under Rule 15(a), if a plaintiff requests leave to amend a complaint . .

9

. such leave must be granted in the absence of undue delay, bad faith, dilatory motive, unfair prejudice, or futility of amendment.").

With respect to the instant motion, the Court focuses on Plaintiff's failures to cure the deficiencies in his pleadings, and whether the proposed amendments are futile. On at least two separate occasions, the District Court has noted its concern with Plaintiff's failure to cure previously identified deficiencies. *See, e.g.*, Opinion, Sept. 11, 2014, D.E. 286, at 9-10; Opinion, Apr. 15, 2014, D.E. 273, at 7-8 (quoting Opinion, Apr. 25, 2013, D.E. 227, at 11-12). Additionally, the District Court instructed the Defendants to focus on the futility of Plaintiff's proposed amendments in the October 13, 2014, Order [D.E. 289].

"Leave to amend a complaint is futile when the complaint as amended would still be properly dismissed or immediately subject to summary judgment for the defendant." *Am. Corporate Society v. Valley Forge Ins. Co.*, 424 F. App'x 86, 90 (3d Cir. 2011) (quoting Cockrell v. Sparks, 510 F.3d 1307, 1310 (11th Cir. 2007)); *see also* 6 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1487 (3d ed. 2010).

To determine whether an amendment would be "properly dismissed," the Court employs the standard applied to Rule 12(b)(6) motions to dismiss. *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997). Under this standard, the question before the Court is not whether the movant will ultimately prevail, but whether the complaint sets forth "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984) (establishing that a "court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations"); *Harrison Beverage*, 133 F.R.D. at 468 ("'Futility' of amendment is shown when the claim or defense is not accompanied by a showing

of plausibility sufficient to present a triable issue."). A two-part analysis determines whether this standard is met. *Fowler*, 578 F.3d at 210 (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 629 (2009)).

First, a court separates the factual and legal elements of a claim. *Fowler*, 578 F.3d at 210. All well-pleaded facts set forth in the pleading and the contents of the documents incorporated therein must be accepted as true, but the Court may disregard legal conclusions. *Id.* at 210–11; *West Penn Allegheny Health Sys., Inc. v. UPMC*, 627 F.3d 85, 97 n.6 (3rd Cir. 2010); *see also Iqbal*, 556 U.S. at 678 (noting that a complaint is insufficient if it offers "labels and conclusions," a "formulaic recitation of the elements of a cause of action," or "naked assertions" devoid of "further factual enhancement") (alterations omitted) (internal quotations marks omitted).

Second, as stated above, a court determines whether a plaintiff's facts are sufficient "to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570; accord Fowler, 578 F.3d at 211. As the Supreme Court instructed in Iqbal, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." 556 U.S. at 678. The plausibility standard is not a "probability requirement," but the well-pleaded facts must do more than demonstrate that the conduct is "merely consistent" with liability so as to "permit the court to infer more than the mere possibility of misconduct." *Id.* at 678–79 (citations omitted) (internal quotation marks omitted). This "context-specific task . . . requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

A court conducting a futility analysis based only upon the sufficiency of the pleading must consider a limited record. Specifically, a court may consider only the proposed pleading, exhibits attached to that pleading, matters of public record, and undisputedly authentic

11

documents provided the claims are based on those documents. *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993); accord West Penn, 627 F.3d at 97 n.6 (reiterating the rule and its limited exception for documents that are "integral or explicitly relied upon in the complaint").

On September 11, 2014, when Judge McNulty denied *pro se* Plaintiff's motion for leave to amend the Second Amended Complaint and file a Third Amended Complaint, he indicated that "[t]his denial is without prejudice to the filing of one more properly supported motion to amend the complaint." Order, Sept. 11, 2014, D.E. 287. On October 30, 2014, Judge McNulty directed Defendants to respond to the latest motion filed by *pro se* Plaintiff for leave to file the Proposed Fourth Amended Complaint, indicating that all prior attempted amendments had "failed to plead facts sufficient to put Defendants on notice as to how their actions could plausibly result in liability" and that Defendants' responses to Plaintiff's motion to amend 'should focus on the issue of whether permitting the amendment would be 'futile'. . . . *See generally Foman v. Davis*, 371 U.S. 178, 182 (1962)." Order, Oct. 30, 2014, D.E. 289. Judge McNulty had previously cautioned *pro se* Plaintiff that the normally liberal standard applied to *pro se* filings would be considered in light of the fact that Plaintiff had already had several attempts to file a pleading that would survive a motion to dismiss. Memorandum/Order, May 22, 2014, D.E. 277.

Therefore, a necessary part of the Court's consideration of Plaintiff's current proposed pleading is whether it cures the deficiencies that the District Court identified. However, the Court finds that the proposed Fourth Amended Complaint neglects to cure many of the deficiencies of the prior attempts and would not survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6).

Plaintiff has separated his allegations into nine separate claims and has listed the parties against whom he brings each claim. However, Plaintiff again has failed to allege facts adequate to place Defendants on notice regarding how their actions violated any law or statute so as to render them liable to Plaintiff for damages. Like its earlier iterations, the proposed Fourth Amended Complaint is conclusory in fashion, omits important factual allegations, and fails to explain how the facts alleged violate the law. A glaring deficiency is the lack of facts concerning the specific conduct of each Defendant. For example, Plaintiff uses such terms as "conspiracy," "coercion," "interference" and "the submission of false claims[,]" but he fails to tie these characterizations to the actions, or failures to act, of any particular defendant in order to state a cognizable claim. Plaintiff fails to properly identify actionable conduct by each Defendant because he does not identify what each Defendant did or failed to do, and how those acts or omissions violated the law. Instead, Plaintiff continues to rely on impermissible group pleading, notwithstanding the District Court's admonishment in the last Opinion denying Plaintiff's amendment. Opinion, Sept. 11, 2014, D.E. 286, at 10 ("There is also a 'group pleading' problem. The final ten factual allegations . . . cite "the collective actions by all twelve Defendants." None of the numbered causes of action specifies the defendant or defendants against which it is directed."). Such group pleading is impermissible because it fails to put each Defendant on notice of their specific actions which render them liable to Plaintiff. Without more, it is impossible for Defendants to mount a defense.

For example, in Claim I, Plaintiff asserts allegations against his ex-wife, Defendant Nussbaum, for "personal injury and negligent action." Proposed Fourth Amended Compl., Oct. 15, 2014, D.E. 288, 22-25. Plaintiff alleges that on August 28, 2005, Defendant Nussbaum dropped a heavy piece of furniture directly onto his back while assisting in re-assembling an

entertainment center which either caused or contributed to a lumbar spinal fracture. *Id.* at 22. Plaintiff claims that this injury caused him to become permanently disabled. *Id.* Plaintiff asserts that thereafter Defendant Nussbaum subjected him to repeated verbal abuse, forced him to perform physical tasks that made his injury worse, and subjected him to an unsafe home environment. *Id.* at 23. Plaintiff recounts two specific instances which he claims exacerbated his medical issues. *Id.* at 24. One was an incident where sewage from his condominium building backed up into his bathroom and once repaired, Defendant left him to clean up the bathroom and himself in a 90-minute span before leaving for vacation. *Id.* The other concerns an incident when Defendant Nussbaum required Plaintiff to clean snow and ice off of her parents' vehicle. *Id.* Plaintiff seeks damages against Nussbaum for this "negligent and abusive conduct" as well as the allegation that "Defendant Nussbaum willfully and repeatedly denied legitimacy/validity of Plaintiff's injury." *Id.* at 25. Putting aside the likely statute of limitations issue, [1] Plaintiff fails to state a cognizable claim, other than a general complaint that his wife lacked sympathy for his injury. The Court and parties should not have to guess at the duty of care that Plaintiff's claim vaguely implies Defendant Nussbaum breached, particularly given Plaintiff's myriad opportunities to cure his pleading.

---

[1] Additionally, it appears that any state law claim that Plaintiff might seek to bring against Defendant Nussbaum based on allegations of personal injury and negligence would be barred by the two-year statute of limitations that governs such actions. *See Brown v. Foley*, 810 F. 2d 55, 56 (3d Cir. 1987). The alleged incidents happened well more than two years before Plaintiff filed the instant action: Plaintiff allegedly dropped the furniture on Plaintiff in 2005 and the other two incidents occurred in 2008. Plaintiff and Nussbaum were divorced in 2010 and there are no allegations that Defendant caused Plaintiff any harm within the two years before Plaintiff filed the Complaint.

In Claims II, III and V, Plaintiff brings claims sounding in fraud. In Claim II, Plaintiff alleges that Defendants GEICO, PPS, Fuge, Ardron, Spaventa and Feldmann "knowingly and fraudulently concealed from Plaintiff, his physicians and his MVA attorney documented risk of short-term and long-term brain and spinal cord injuries associated with repetitive traumatic impacts sustained during MVAs," "knowingly and fraudulently concealed from Plaintiff, his physicians and his MVA attorney Independent Medical Examination ("IME") reports written by Dr. Menachem Epstein . . . [which included a] diagnosis statement of: 'Causal relationship of accident to current lumbar pain is verified; which is superimposed on residual pain from a previous major spinal procedure,'" and "these same Defendants voluntarily arranged for, funded and produced other IME reports contradicting or misrepresenting Dr. Epstein's July 2008 IME report in order to mislead and conceal material facts and information with the intent to defraud Plaintiff and his medical providers as well as deceive a state-level governmental agency." *Id.* at 25-39.

The allegations in Claim III, which names Defendants Nussbaum, RHI, Meritain, GEICO and PPS, are identical to those found in Claim II, except Claim III removes some Defendants while adding others. *Id.* at 39-41. In Claim V, Plaintiff alleges that all Defendants acted in concert to fraudulently conceal the above information from him. *Id.* at 49-52. These claims are patently deficient under Federal Rules of Civil Procedure 8 and 9. To plead a claim based on fraud, a plaintiff must meet the heightened pleading requirements of Federal Rule of Civil Procedure 9(b). *See* Fed. R. Civ. P. 9 ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake"). A plaintiff alleging fraud must state the circumstances of the alleged fraud with sufficient particularity to place the defendant on notice of the "precise misconduct with which [it is] charged." *Frederico v. Home Depot*, 507

15

F.3d 188, 200 (3d Cir. 2007) (quoting *Lum v. Bank of Am.*, 361 F.3d 217, 223–24 (3d Cir.2004)) (internal quotations omitted). To satisfy this standard, the plaintiff "must plead or allege the date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation." *Id.*

Plaintiff completely fails to allege the essential elements of a claim for fraud such that he does not meet the pleading requirement of Fed. R. Civ. P. 8, let alone the more heightened pleading standard of Rule 9(b). For example, in Claim IV, Plaintiff alleges that Defendants Nussbaum, RHI, Meritain, Quinlivan, Bremer, AWS, GEICO and PPS "made material misrepresentations on multiple occasions to Plaintiff, his physicians, his attorney, and multiple state and/or federal agencies . . . regarding the true and full nature and extent of Plaintiff's injuries, orthopedic and neurological conditions/impairments" and "misrepresented the dangers Plaintiff faced in all daily life activities." *Id.* at 42. Plaintiff asserts other material misrepresentations made by Nussbaum, and her attorneys, Bremer and AWS, such as: (1) misrepresentations made by Nussbaum regarding her financial records in her complaint for divorce, while also accusing Plaintiff of "concealing windfall assets related to his January 2008 MVA;" and (2) misrepresentations by Bremer and AWS regarding how long Plaintiff and Nussbaum had been living separately before filing for divorce. *Id.* at 45-48.

Plaintiff's claim regarding negligent misrepresentation fails to state a claim because Plaintiff lumps the Defendants together, and neither attributes specific misrepresentations to any one Defendant, nor explains how all of the defendants to the claim are responsible for any particular misrepresentation. Although the negligent misrepresentation claim is replete with conclusions, it fails to explain the necessary facts to satisfy the elements of the cause of action. For example, Plaintiff fails to allege: 1) the special relationship between Plaintiff and each

16

Defendant named; 2) the nature, extent and content of the misrepresentations; 3) who made the misrepresentations and to whom they were made; 4) the dates of the misrepresentations; 5) what, if any, damages he sustained as a result of the misrepresentations; and 6) how he relied on the misrepresentations to his detriment. Plaintiff's claim for negligent misrepresentation as to Nussbaum and her attorneys, Bremer and AWS, is similarly deficient. Plaintiff has had four chances to amend this claim to include the details of the alleged misrepresentations by Defendants but Plaintiff again fails to do so.

In Claim VI, Plaintiff names Nussbaum, RHI, Meritain, Quinlivan, Bremer, AWS, GEICO and PPS as Defendants. *Id.* at 52-69. However, the substantive allegations within this claim, as well as the prayer for relief, demonstrate that this claim is brought solely against Defendants Nussbaum, RHI and Meritain. *Id.* This claim consists of two core allegations: 1) Defendants failed to provide Plaintiff with proper notice regarding continuing his healthcare benefits under COBRA; and 2) Defendants RHI and Meritain violated Plaintiff's rights under New Jersey's personal Injury Protection laws ("PIP") for filing a faulty lien against Plaintiff's suit stemming from a January 28, 2008 motor vehicle accident. *Id.* Plaintiff's claim that Defendants failed to provide him with proper notice of COBRA continuation coverage fails to state a claim because it is clear from Plaintiff's own allegations in the Complaint that he was afforded notice of his rights and obligations under COBRA, including the requirement that he pay premium payments once RHI was no longer making such payments. For example, Plaintiff states in the proposed Fourth Amended Complaint that "Nussbaum verbally informed Plaintiff of COBRA in November 2008 and shared copy of COBRA election form." *Id.* at 54. Indeed, back in 2011, in opposing Defendants' Motion to Dismiss his Second Amended Complaint, Plaintiff asserted that "[b]oth Beth Nussbaum and the Plaintiff were aware of the monthly premium

amounts associated with individual coverage, as indicated in the COBRA agreement signed in November 2008 (Exhibit D)." Plaintiff's Opposition to Defendants' Motion to Dismiss Second Amended Complaint, May 9, 2011, D.E. 57. Plaintiff also asserts in the proposed Fourth Amended Complaint that in August 2009, roughly a month before the cessation of COBRA coverage, he was speaking to an employee of the New Jersey Department of Banking and Insurance regarding extending COBRA coverage. Proposed Fourth Amended Compl., Oct. 15, 2014, D.E. 288, 60-61. Yet, Plaintiff now attempts to assert a claim against Defendants Nussbaum, RHI and Meritain for failure to cease COBRA coverage when Plaintiff did not make those premium payments. Plaintiff fails to reconcile the contradiction, and he cannot bring a claim against Defendants where his own allegations reveal he had indeed received notice regarding continuing COBRA coverage. Accordingly, this claim fails.

Plaintiff's claim pursuant to PIP also fails to state a claim. Plaintiff fails to indicate how the filing of a faulty lien violated PIP, how he was harmed, and what damages he suffered. It is little more than a collection of conclusory statements, and therefore fails to satisfy the *Iqbal*/*Twombly* standard.

Claim VII is brought against Defendants Nussbaum, Bremer, AWS, GEICO, and PPS pursuant to the ADA. But Defendants are not government entities, covered employers or maintainers of public accommodations. *Id.* at 69-73. It bears noting that the District Court previously informed Plaintiff, in its September 11, 2014 Opinion, that none of his claims fell within the purview of the ADA.[2] *See* Opinion, Sept. 11, 2014, D.E. 286, at 14.

---

[2] The same is true of Plaintiff's reliance, in Count VI, on the Social Security Act and the Medicare Act of 1965. The District Court informed Plaintiff that these statutes "bear no obvious relation to the allegations."

18

Claim VIII sets forth a civil rights claim against most of the Defendants, presumably pursuant 42 U.S.C. §§ 1982, 1985 and 1986 (as these civil rights statutes are listed in the front of Plaintiff's proposed Fourth Amended Complaint). However, Plaintiff fails to allege that he was suffered discriminated based on his race, as required by 42 U.S.C. § 1982, or that Defendants were state actors, as required by 42 U.S.C. §§ 1985 and 1986. *Id.* at 73-76. Because Plaintiff has failed to allege these threshold requirements for relief under the civil rights laws, Plaintiff's Claim VIII for a violation of his civil rights fails to state a claim for relief.

Finally, in Claim IX, Plaintiff alleges that Defendants Nussbaum, Bremer, and AWS acted to deny him social security benefits. *Id.* at 76-80. However, there are no substantive allegations against Bremer and AWS in this claim. *Id.* Plaintiff asserts that he was denied social security disability benefits for a twenty-five-month period, from November 22, 2006 to December 31, 2008, because Nussbaum nagged him so much about not working that he returned to teaching, thereby causing him to lose disability benefits. *Id.* This claim plainly fails to state a cognizable cause of action.

Accordingly, the Court concludes that the proposed Fourth Amended Complaint fails to state any viable claim against any Defendant, and that permitting its filing would be futile.

## CONCLUSION

For the reasons stated herein, Plaintiff's motion for leave to file the proposed Fourth Amended Complaint is denied. The Court will issue an Order consistent with this Opinion.

*s/ Michael A. Hammer*
**UNITED STATES MAGISTRATE JUDGE**

Dated: April 28, 2017